UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD VAUGHN, et al., : | |
| : | Civ. No. 05-2725 (GEB) |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| FLOWSERVE CORPORATION, et al., : | |
| : | |
| Defendants. : | REPORT AND RECOMMENDATION |
| : | |
| _____ : | |

**BONGIOVANNI, UNITED STATES MAGISTRATE JUDGE**

Presently before the Court is the request by Plaintiffs to remit this civil action to arbitration. This matter has been referred to this Court by the Honorable Garrett E. Brown, Jr., Chief United States District Judge, District of New Jersey, for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1).

**Issue**

This request for arbitration is a propagation of a civil action filed by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC [hereinafter "the Union" or "Plaintiffs"] and its relevant members arising over a dispute regarding Defendant Flowserve Corporation(s), et al. [hereinafter "Flowserve" or "Defendants"] reduction in retiree medical benefits. Defendants oppose Plaintiffs' Motion and seek to have the litigation remain within the confines of the federal judiciary. For the reasons given below, this Court shall recommend that Plaintiffs' Motion to Remit to Arbitration be GRANTED.

**The Facts**

During all relevant times, the Union represented production and maintenance employees at the Phillipsburg facility. (Plaintiffs' Motion, p. 2.) Beginning in 1980 with Flowserve's predecessor in interest, Ingersoll-Rand, and throughout the ownership interest of Flowserve and their successor in interest, Curtiss-Wright Electro-Mechanical Corporation, the Union had entered into a number of collective bargained agreements [hereinafter "CBA"(s)] which provided for the determination of, among other items, wages, benefits, and provisions regarding retiree medical benefits as agreed upon by the Union and the entity then in possession. (*Id.*)

Provisions regarding retiree medical benefits were referenced as "Letter M." Letter M provided as follows:

> It is understood by the parties that any retired employee receiving benefits, or any person receiving surviving spouse benefits, as provided by the Agreement, shall not have such existing benefits terminated or reduced, regardless of the existence, or lack thereof, of the Labor Agreement, unless such reduction or termination is mutually agreed upon by the Company and the Union.

(*Id.*).

The initial CBA entered into by the Union and the entity then in possession, Ingersoll-Rand in 1980 contained the Letter M provision. In 1992, Ingersoll-Rand entered into a partnership with Dresser Pump Company, during which time the company was known as Ingersoll Dresser Pump. (*Id.*) Ingersoll Dresser Pump and the Union thereafter entered into a CBA which became effective on January 1, 1997 [hereinafter "1997 CBA"] and which remained in effect at least until the sale of the company to Flowserve in August of 2000.[1] (Defendants'

---

[1] The parties differ as to whether the 1997 CBA bound Flowserve to its terms until its May 15, 2001 expiration or whether the August 2000 CBA superceded the 1997 CBA. The issue is of little importance as a subsequent CBA was entered into four months later, binding Flowserve and the Union to the terms and conditions of the 1997 CBA until May 15, 2002. As

Opposition, p. 2.) The 1997 CBA expired, pursuant to its terms, on May 15, 2001. (*Id*.)

The 1997 CBA contained numerous provisions, including but not limited to, Letter M and the following grievance and arbitration language:

> All differences, disputes, and grievances that may arise between the Union and the Company with regard to the interpretation or application of the provisions of this Agreement relating to rates of pay, wages, hours of employment, and other conditions that shall not have been satisfactorily settled after following the procedure set forth in Article 8 shall, at the request of either party, be promptly submitted to arbitration (by a Board of Arbitration at an informal hearing).

(Plaintiffs' Motion, p. 5.)

In August, 2000, Flowserve and the Union entered into a CBA which bound Flowserve to the terms of the 1997 CBA for employees retained after August 10, 2000, and which provided alternative terms for those subject to a work force reduction. (Defendants' Opposition, p. 3.)

In December, 2000, the parties entered into another agreement which extended the 1997 CBA and its relevant provisions to May 15, 2002. The agreement further outlined retiree benefits for those who retired after August 8, 2000, and incorporated Letter M.[2] (Plaintiffs' Motion, pp. 3, 4.)

On April 30, 2002, with the 1997 CBA set to expire approximately two weeks later, contract renewal negotiations began. (Defendants' Opposition, p. 3.) Negotiations were extensive, and issues such as wages and benefits, including retiree medical benefits, were

---

such, this Court shall refer to the 1997 CBA, the August 2000 agreement and the December , 2000 agreement as the "1997 CBA."

[2] The Plaintiffs' Complaint alleges that the Defendants violated the terms of the 1997 CBA and limits the putative Plaintiffs to employees who retired after Flowserve purchased the Phillipsburg facility in August, 2000, and before the expiration of the 1997 CBA on May 15, 2002. (Plaintiffs' Complaint; Plaintiffs' Motion, p. 3.)

debated extensively. (*Id*. at pp. 3, 4.) Although the negotiations resulted in a tentative accord between the parties, the proposed agreement was subsequently defeated by the employees. (*Id*. at p. 4.) Thereafter, a strike by said employees ensued, which ultimately resulted in a lockout. (*Id*.)

On July 1, 2002, the Union and Flowserve attempted to renegotiate the terms of the proposed CBA. (*Id*.) On September 26, 2002, the parties ceased negotiations, having been unable to reach a satisfactory bargaining agreement. (*Id*. at p. 5.)

In June and August of 2002, the Union filed a series of charges with the National Labor Relations Board [hereinafter "the NLRB"]. (*Id*.)  The NLRB consolidated the Union's charges and on December 16-17, 2002, conducted a hearing in consideration of said charges. (*Id*.) A decision in favor of Flowserve was rendered on June 14, 2003. (*Id*.) Union charges had included the allegation that Flowserve's efforts to negotiate Letter M was unlawful conduct.[3] (*Id*.)

---

[3] Defendants' request that the District Court take judicial notice of the transcript of the December 16-17, 2002 hearing, as well as a contract proposal used as evidence during said hearing, pursuant to Federal Rule of Evidence 201.

Federal Rule of Evidence 201, *et seq*. is the cornerstone of judicial notice, and it states, in relevant part:
> Judicial Notice of Adjudicative Facts - F.R.E. 201(b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Courts may judicially notice public records including prior judicial opinions. Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004). Should court documents be judicially noticed, they may not be noticed "for the truth of the facts recited therein, but for the existence of the [court document], which is not subject to reasonable dispute over its authenticity." See Southern Crossover Seas Agencies, Inc. v. Wah Kong Shipping Group, Ltd., 181 F.3d 410, 427 (3d Cir. 1999); see also Kramer v. Time Warner, 937 F.2d 767, 774 (2d Cir. 1991) (holding that documents judicially noticed "may only be considered for the limited purpose of showing that a particular statement was made by a particular person" and not "for the truth of the matters purportedly contained within those documents.")  If a court were to consider and judicially notice

The Union filed an appeal (subsequently withdrawn) and while that appeal was pending, the parties returned to the bargaining table. (*Id*.) Two agreements resulted. (*Id*.) The first, entered into by the parties on January 6, 2004, was a separation agreement which terminated the "bulk" of the employees then currently in lockout status. (*Id*.) The second was a CBA, entered into by the parties on January 7, 2004 [hereinafter "2004 CBA"]. (*Id*.) Letter M was not included in the 2004 CBA. (Plaintiffs' Motion, p. 18; Defendants' Motion, p. 6.)

In November, 2004, Flowserve sold the Phillipsburg facility, and in February, 2005, Flowserve announced to retirees that they would be reducing their medical benefits effective March 1, 2005. (Plaintiffs' Motion, p. 4.) Flowserve did not discuss with, nor gain the consent of the Union before announcing and implementing the retiree medical benefit reductions. (*Id*. at p. 5.)

The scope of the 2004 CBA remains hotly contested by the parties. Plaintiffs assert that the provisions and terms of the 2004 CBA applied only to "three active employees." (Plaintiffs' Motion, p. 4, 17-18.) Defendants maintain that nothing in the 2004 CBA "purports to limit the reach of the agreement to current employees." (Defendants' Opposition, p. 6.) Both provide affidavits in support of their respective positions from co-counsel attesting to personal knowledge of the facts.

---

documents for their truth it would be, in essence, authorizing a trial by public documents. In Re Viropharma, Inc., 2003 WL 1824914 (E.D.Pa. 2003).

Here Defendants seek to have the contents of the transcript and evidence given at the December 16-17, 2002 hearing judicially noticed rather than merely noting their existence. To judicially notice the contents of the aforementioned court documents would be violative of the noted precedent, and as such, this Court must recommend that the District Court deny Defendants' request.

**The Parties' Arguments**

Plaintiffs argue that the language of Letter M, as expressed in the 1997 CBA, stating that retired employees receiving benefits "shall not have such existing benefits terminated or reduced, regardless of the existence, or lack thereof, of the Labor Agreement . . .," vested the putative employees, thereby insulating them from the elimination of Letter M in the 2004 CBA and its attendant provision that "[a]ll other letters or agreements not specifically referred to within this agreement become null and void with this agreement."  Plaintiffs further argue that because the retired employees in question are vested pursuant to the 1997 CBA and because that CBA contains an arbitration clause, Defendants are contractually bound to arbitrate the issue of the reduction of medical benefits.

Defendants counter that the putative employees are not vested under the 1997 CBA, but rather, are subject to the 2004 CBA and its terms as evidenced by expiration dates which are provided for in all CBAs the parties previously entered, as well as by the underlying medical plans which do not contain arbitration clauses, and the language in the 2004 CBA which nullifies all previous agreements.  Defendants further argue that because the retired employees are not vested, they are subject to the provisions of the 2004 CBA, which does contain an arbitration clause, but does not contain a Letter M about which to arbitrate.

**Discussion**

    **A.  Legal Standards**

"[T]he question of arbitrability – whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination."  *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986).

However, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.* ". . . [I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Id.* (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). Arbitration is a matter of contract and an arbitrator's power is derived solely from the agreement of the parties. *Id*. at 648. Nevertheless, where there is any question, all doubts are to be resolved in favor of arbitration. *Id.* at 650.

Further, "a claimed contract violation comes within the scope of an arbitration clause . . . when the subject matter of the grievance is one that is within the zone of interests that have received protection in the collective bargaining agreement." *E.M. Diagnostic Systems, Inc. v. Local 169, Intern, Brotherhood of Teamsters*, 812 F.2d 91, 95 (3d Cir. 1987). In determining whether a dispute is subject to arbitration, pursuant to the arbitration clause of a collective bargaining agreement, a court is to consider (1) whether the present dispute comes within the scope of the arbitration clause, (2) whether any other provision of the agreement expressly excludes from arbitration the kind of dispute involved in the present case and (3) whether there is any other "forceful evidence indicating that the parties intended such an exclusion." *Id*.

    **B.**    **Question of the Applicability of the 1997 or 2004 CBA to the Putative Plaintiffs**

The parties have engaged in intensive debate regarding whether the question of the applicability of the 1997 or 2004 CBAs is before the District Court. Defendants, in essence,

assert that the separation of the arbitrability issue and the underlying claims are not mutually exclusive and cannot be parsed. They make this assertion based on the belief that a determination regarding arbitration can only be made after a determination regarding which CBA is applicable as the 2004 CBA contains no Letter M about which to arbitrate.

  Plaintiffs argue that they can be determined separately, and under the auspice of prevailing law, insist that they should.

  This Court finds that a separation of the issues can be accomplished, and under the guidance It receives from prior precedent, shall so recommend. Letter M is not the basis of the parties' dispute, as the parties agree that the 2004 CBA does not contain a Letter M provision, but that the 1997 CBA does, and as the parties do not appear to debate the language of Letter M or the coverage of retiree medical benefits it provides. The issue is whether the retirees in question are vested under the 1997 CBA or whether the 2004 CBA, with its nullification language regarding prior agreements, is applicable. If the 2004 CBA is binding upon the retirees, then the issue is decided as the retirees would not have contractual protection regarding their medical benefits. If the 1997 CBA vested the retirees, then the issue is decided as the retirees would remain protected under the Letter M provision of the 1997 CBA. As such, the question becomes whether the determination of "which CBA controls" falls within the scope of the arbitration clauses of either the 1997 and 2004 CBAs. The decision to remit to arbitration is therefore not contingent on the absence of Letter M in the 2004 CBA, and the determination of whether to remit this civil action to arbitration can be made independent of any findings regarding the merits of the case.

      C.      **Analysis of the *E.M.* Factors**

            1.      **Scope of the Arbitration Clause and Zone of Interests**

The first of the *E.M.* factors requires a court to consider whether the present dispute comes within the scope of the arbitration clause. In contemplating the scope of an arbitration clause, the Third Circuit proffered that "a claimed contract violation comes within the scope of an arbitration clause . . . when the subject matter of the grievance is one that is within the zone of interests that have received protection in the collective bargaining agreement." *Id.* at 95.

The pertinent language of the arbitration clauses in both the 1997 and 2004 CBAs are identical, and state:

> All differences, disputes, and grievances that may arise between the Union and the Company, with regard to the interpretation or application of the provisions of this Agreement relating to rates of pay, wages, hours of employment, and other conditions that shall not have been satisfactorily settled after following the procedure set forth in Article 8 shall, at the request of either party, be promptly submitted to arbitration . . .

(2004 CBA at p. 25; 1997 CBA at p. 30.)

Although the language of the arbitration clauses in the CBAs in question is not as generalized as the language the Third Circuit faced in *E.M. Diagnostic Systems, Inc. v. Local 169, Intern, Brotherhood of Teamsters* (arbitration for "any dispute arising out of a claimed violation of this Agreement"), the language is nevertheless broad and encompasses "rates of pay, wages, hours of employment, and *other conditions that shall not have been satisfactorily settled . . .*" (Emphasis added.) Clearly the parties intended the "other conditions" language of the arbitration agreement to encompass all other provisions and conditions of the CBA, including whether the putative employees were vested under the 1997 CBA or whether the 2004 CBA

9

controls. Indeed, as the 2004 CBA is 37 pages long and the 1997 CBA is 77 pages long, a catch-all phrase would be necessary to indicate that all provisions of the CBA were intended to be subject to the arbitration clause . Further, Defendants do not dispute that the Letter M provision would fall under the 2004 CBA arbitration clause if that provision existed in said CBA. (Defendants' Opposition, p. 8) ("While Flowserve concedes that a current dispute concerning retiree medical benefits for employees retiring on or after January 7, 2004 would likely fall within [the 2004 CBAs] arbitration provision . . .). If Letter M falls under the arbitration clause, then questions of vesting and controlling CBAs most certainly does.

Therefore, this Court finds that the first factor of *E.M.* has been satisfied as the question of which CBA controls falls within the scope of the arbitrations clauses of the 1997 and 2004 CBAs.

### 2. Provisions Within the Agreement(s) which Expressly Excludes from Arbitration the Dispute in Question

The second *E.M.* factor requires this Court to consider whether there are any provisions within either the 1997 or 2004 CBAs that expressly exclude from arbitration the dispute in question.

The parties have not suggested that any exclusion provision exists, and after careful review of the applicable CBAs, this Court is unable to locate any exclusion language regarding arbitration.

As such, this Court is satisfied that no exclusion language exists in either CBAs and that the second *E.M.* factor has been satisfied.

      **3.**      **Other "Forceful Evidence" to Show the Intent of the Parties that the Dispute in Question is Excluded from the Scope of the Arbitration Clauses**

The final factor *E.M.* requires this Court to consider is whether there is other evidence within the terms of the CBAs that shows that the issue of whether the putatitve retirees were vested under the 1997 CBA or whether the 2004 CBA controls was not intended to fall within the scope of the arbitration clauses.

If the issue had remained the absence of Letter M in the 2004 CBA, evidence provided by Defendants regarding expiration dates on all CBAs between the parties would be pertinent. However, as previously discussed, the issue of which CBA controls is central, and there is no evidence within either CBA or the circumstances surrounding the parties that said issue was intended to be excluded from the scope of the arbitration clauses. Additionally, the presence of the arbitration clause in every CBA the parties entered into is evidence that the parties intended that any issue arising between the Union and Flowserve regarding terms contained in the CBAs was and is to arbitrated.[4]

This Court is therefore satisfied that the third *E.M.* factor has been satisfied.

---

[4] The Court notes Flowserve's assertion that the Union never requested that the issue at bar be submitted to arbitration. The Court finds, however, that a failure of the Union to communicate directly to Flowserve to request arbitration does not subjugate the effectiveness of the language of the arbitration clauses nor the Union's current Motion to Remit.

**Conclusion**

In view of the foregoing, it is respectfully recommended that this federal action be submitted to arbitration. Local Civil Rule 72.1(c)(2) permits objections to this Report and Recommendation within 10 days after being served with a copy thereof.


                                      Respectfully submitted,


                                      s/Tonianne J. Bongiovanni
                                      Honorable Tonianne J. Bongiovanni
                                      United States Magistrate Judge

Dated: May 4, 2003