<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD VAUGHN, et al., : | |
| : | Civ. No. 05-2725 (GEB) |
| Plaintiffs, : | |
| : | **MEMORANDUM OPINION** |
| v. : | |
| : | |
| FLOWSERVE CORPORATION, et al., : | |
| : | |
| Defendants. : | |

**<u>BROWN, Chief Judge</u>**

This matter comes before the Court upon defendants Flowserve Corporation ("Flowserve") and the Flowserve Corporation Retiree Medical Plan's (collectively "Defendants") objection to Magistrate Judge Bongiovanni's May 4, 2006 Report and Recommendation. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court, having considered the parties' submissions, and for the reasons set forth below, will: (1) overrule Defendants' objection; (2) adopt Magistrate Judge Bongiovanni's May 4, 2006 Report and Recommendation; and (3) remit this case to arbitration and stay further discovery.

**I.    BACKGROUND**

In her May 4, 2006 Report and Recommendation, Magistrate Judge Bongiovanni described in detail the factual background of this case. The Court will not repeat that description, except for those portions that are necessary for this review.

On May 23, 2005, plaintiffs Donald Vaughn, Malcolm Schinstine, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("the Union") (collectively "Plaintiffs") filed the Complaint in this action. Plaintiffs asserted several claims against Defendants, including: (1) violation of a

1

labor agreement pursuant to 29 U.S.C. § 185; (2) violation of a retirement plan pursuant to section 502 of ERISA; and (3) breach of fiduciary duty. (Compl. ¶¶55-66.) On February 10, 2006, Plaintiffs filed a motion to remit this case to arbitration and stay further discovery. After the parties fully briefed the matter, on May 4, 2006, Magistrate Judge Bongiovanni issued a Report and Recommendation addressing Plaintiffs' motion ("the Report and Recommendation"). She recommended that Plaintiffs' motion be granted, and that the matter be remitted to arbitration. (Report and Recommendation at 12.)

On May 19, 2006, Defendants filed an objection to the Report and Recommendation. The parties having completed briefing concerning Defendants' objection, the Court will now conduct its review.

## II. DISCUSSION

### A. Standard of Review

Review of a Magistrate Judge's report and recommendation, as well as objections to it, is governed by Local Civil Rule 72.1. The rule provides that the Court "shall make a *de novo* determination of those portions [of the report and recommendation] to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." L. Civ. R. 72.1(c)(2). In conducting its review, the Court "may consider the record developed before the Magistrate Judge, making [its] own determination on the basis of that record." *Id.* See also *State Farm Indem. v. Fornaro*, 227 F. Supp. 2d 229, 231 (D.N.J. 2002).

### B. The Relevant Factual Background

At all relevant times, the Union represented production and maintenance employees at a certain facility located in Phillipsburg, New Jersey. (Report and Recommendation at 2.) Beginning in 1980, the Union entered into a number of collective bargaining agreements

("CBA"s) with Flowserve's predecessor-in-interest, Flowserve, and Flowserve's successor-in-interest. (*Id.*) Two CBAs are relevant to the issue of whether the parties' dispute is subject to arbitration – one entered into in 1997 ("1997 CBA"), and another entered into in 2004 ("2004 CBA").

The 1997 CBA includes two relevant sections. First, it contains what the parties refer to as "Letter M." (*Id.* at 3.) That section provides that:

> It is understood by the parties that any retired employee receiving benefits, or any person receiving surviving spouse benefits, as provided by the Agreement, shall not have such existing benefits terminated or reduced, regardless of the existence, or lack thereof, of the Labor Agreement, unless such reduction or termination is mutually agreed upon by the Company and the Union.

(*Id.* at 2.) Second, the 1997 CBA contains a provision that addresses the topic of arbitration. That section provides that:

> All differences, disputes, and grievances that may arise between the Union and the Company with regard to the interpretation or application of the provisions of this Agreement relating to rates of pay, wages, hours of employment, and other conditions that shall not have been satisfactorily settled after following the procedure set forth in Article 8 shall, at the request of either party, be promptly submitted to arbitration (by a Board of Arbitration at an informal hearing).

(*Id.* at 3.) The parties dispute whether Defendants remain bound by the terms set forth in the 1997 CBA. Plaintiffs argue that these terms are still binding, while Defendants argue that they have either expired or been superseded by the 2004 CBA.

The 2004 CBA also contains two relevant provisions. First, it provides that "[a]ll other letters or agreements not specifically referred to within this agreement become null and void with this agreement." (Defs.' Br. at 3.) Second, it contains the same arbitration provision as the 1997 CBA. (Report and Recommendation at 9.) The 2004 CBA does not contain a Letter M section. (*Id.* at 8.) Defendants argue that the 2004 CBA, and not the 1997 CBA, controls their obligations to their retired employees. (Defs.' Br. at 3.) According to Defendants, the 2004 CBA voided their obligations stemming from Letter M of the 1997 CBA. (*Id.*) They further argue that the arbitration language in the 2004 CBA controls this case, and that because the 2004 CBA does not contain Letter M, which terms Plaintiffs seek to enforce, this dispute should not be arbitrated.

(*Id.* at 5.)  Plaintiffs challenge both views, arguing that the 1997 CBA's Letter M conditions and arbitration clause should be enforced against Defendants.  (*See* Pls.' Br. at 3.)

### C. The Report and Recommendation

In her Report and Recommendation, Magistrate Judge Bongiovanni correctly observed that "[i]n determining whether a dispute is subject to arbitration, pursuant to the arbitration clause of a collective bargaining agreement, a court is to consider (1) whether the present dispute comes within the scope of the arbitration clause, (2) whether any other provision of the agreement expressly excludes from arbitration the kind of dispute involved in the present case and (3) whether there is any other 'forceful evidence indicating that the parties intended such an exclusion.'"  (Report and Recommendation at 7 (citing *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Brotherhood of Teamsters*, 812 F.2d 91, 95 (3d Cir. 1987)).)  Applying this test, she found that Plaintiffs successfully satisfied each of the factors and recommended that this case be remitted to arbitration.  (*Id.* at 9-11.)

### D. Defendants' Objection to the Report and Recommendation

Defendants object to the Report and Recommendation, claiming that none of the *E.M. Diagnostic* factors are satisfied in this case.  The Court will separately address Defendants' arguments concerning each of those factors.

#### 1. Whether the Present Dispute Comes Within the Scope of the Arbitration Clauses

##### a. Defendants' Arguments Concerning the Inapplicability of the Arbitration Clauses

Defendants argue that the present dispute does not fall within the scope of the arbitration clause in either the 1997 CBA or the 2004 CBA.  Defendants believe that this dispute is governed by the 2004 CBA, and that the 1997 CBA's arbitration clause therefore does not apply.

4

(*See* Defs.' Br. at 5.)  Defendants also argue that the present dispute is not covered by the 2004 CBA's arbitration clause.  According to Defendants, that clause provides for arbitration only for disputes concerning "rates of pay, wages, hours of employment, and other conditions . . . ."  (*Id.*)  Defendants claim that because Plaintiffs seek enforcement of conditions not set forth in the 2004 CBA, i.e. the conditions outlined in Letter M, which was not included in the 2004 CBA, the arbitration clause in that agreement does not govern this dispute.

          **b.**        **This Dispute Is Governed By the Arbitration Clause in Either the 1997 CBA or the 2004 CBA**

Defendants' arguments are not persuasive.  The central merits issue in this case is which agreement controls Defendants' obligations with respect to their retired employees – the 1997 CBA or the 2004 CBA.  Letter M protects retired employees and their surviving spouses from having "[their] existing benefits terminated or reduced, regardless of the existence, or lack thereof, of the Labor Agreement . . . ."  (Report and Recommendation at 2.)  If Plaintiffs are correct, then the Letter M obligations of the 1997 CBA continue to apply to Defendants.  If Defendants are correct, then the 2004 CBA's language that "[a]ll other letters or agreements not specifically referred to within this agreement become null and void with this agreement" terminated their Letter M obligations. (Defs.' Br. at 3.)  There is no dispute that one of these two agreements controls – the question is which one.

Both agreements, however, contain the same language concerning arbitration.  (Report and Recommendation at 9.)  That language provides that "[a]ll differences, disputes, and grievances that may arise between the Union and the Company, with regard to the interpretation or application of the provisions of this Agreement relating to rates of pay, wages, hours of employment, and other conditions" will be remitted to arbitration.  (*Id.*)  Regardless of whether Plaintiffs' interpretation or Defendants' ultimately prevails, the arbitration clause of the respective CBA would control the current dispute.

Defendants argue that the 2004 CBA's arbitration clause does not govern disputes

5

concerning their alleged Letter M obligations because the agreement does not contain Letter M. Defendants have argued, however, that a certain provision of the 2004 CBA terminated their prior obligations under Letter M, namely, the section providing that "[a]ll other letters or agreements not specifically referred to within this agreement become null and void with this agreement . . . ." (Defs.' Br. at 3.) According to Defendants' interpretation of the 2004 CBA, that provision voided their earlier Letter M obligations concerning "rates of pay, wages, hours of employment, and other conditions . . . ." (*See id.* at 5.) That portion of the 2004 CBA, therefore, would be subject to the 2004 CBA arbitration clause.

        2.        **Whether Any Other Provision of the Agreements Expressly Excludes From Arbitration the Kind of Dispute Involved in the Present Case**

Defendants do not point to any provision in the 2004 CBA that excludes this dispute from arbitration. They state only that the agreement "is silent on the benefits issue . . . ." (Defs.' Br. at 6.) Defendants argue that the 1997 CBA, however, expressly excludes this dispute from arbitration. According to Defendants, "the 1997 CBA provides that the parties' disagreements will not be subject to arbitration following the agreement's expiration." (*Id.*) They cite the following provision in the 1997 CBA:

> In the event that either party [] terminates this Agreement . . . the parties shall be relieved of the provisions of Section 1 of Article 14 of this Agreement [prohibiting certain labor activities], but in no event shall any disagreement of the parties in negotiations following such notice of termination [or] modification be subject to arbitration.

(*Id.* at 3.) Defendants argue that because the 1997 CBA has expired, its arbitration clause is no longer enforceable.

This provision does not expressly exclude the present dispute from arbitration. Its language excludes from arbitration "any disagreement of the parties in negotiations" after one of the parties terminates or modifies the agreement. (*Id.*) The present dispute, however, does not follow termination or modification by a party, nor does it concern a disagreement in negotiations after such an action. It concerns instead the interpretation of

the written conditions set forth in Letter M of the 1997 CBA and the provision in the 2004 CBA that Defendants claim voided their Letter M obligations. Defendants have thus failed to cite any provision in either the 1997 CBA or the 2004 CBA that expressly excludes this dispute from arbitration.

### 3. Whether There Is Any Forceful Evidence Indicating That the Parties Intended Such an Exclusion

Defendants argue that there is forceful evidence showing that the parties intended to exclude this dispute from arbitration. According to Defendants, "the plain language of the 2004 CBA limits arbitration to matters arising under that document and restrains an arbitrator from ruling on any matter outside its terms." (Defs.' Br. at 7.) They further claim that "the 1997 CBA explicitly provided that the parties shall have no duty to arbitrate following that agreement's expiration." (*Id.*)

Neither argument is persuasive. With respect to the 2004 CBA, Defendants cannot claim that this dispute falls "outside its terms" – they claim that the agreement contained a provision that explicitly made their prior Letter M obligations "null and void[.]" (*Id.* at 3.) As for the 1997 CBA, it only excludes from arbitration disputes concerning a "disagreement of the parties in negotiations" after one of the parties terminates or modifies the agreement. (*Id.*) The present dispute does not fall in that category.

As Magistrate Judge Bongiovanni correctly notes in the Report and Recommendation, "the presence of the arbitration clause in every CBA the parties entered into is evidence that the parties intended that any issue arising between the Union and Flowserve regarding terms contained in the CBAs was and is to be arbitrated." (Report and Recommendation at 11.) Despite Defendants' arguments to the contrary, there is forceful evidence showing that the parties intended that – and agreed to have – this type of dispute be subject to arbitration.

### III.   CONCLUSION

For the above reasons, the Court:  (1) overrules Defendants' objection to Magistrate Judge Bongiovanni's May 4, 2006 Report and Recommendation; (2) adopts the Report and Recommendation; and (3) grants Plaintiffs' motion to remit this case to arbitration and stay further discovery.  An appropriate form of order is filed herewith.

Dated:  July 31, 2006

                                                            s/ Garrett E. Brown, Jr.
                                                       GARRETT E. BROWN, JR., U.S.D.J.