<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD VAUGHN, et al., : | |
| Plaintiffs, : | Civ. No. 05-2725 (GEB) |
| : | **MEMORANDUM OPINION** |
| v. : | |
| FLOWSERVE CORPORATION, et al., : | |
| Defendants. : | |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon defendants Flowserve Corporation ("Flowserve") and the Flowserve Corporation Retiree Medical Plan's (collectively "Defendants") motion for summary judgment. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will deny Defendants' motion.

**I.    BACKGROUND**

Detailed factual backgrounds of this case are provided in both Magistrate Judge Bongiovanni's May 4, 2006 Report and Recommendation (the "Report and Recommendation") and this Court's adoption thereof dated July 31, 2006 (the "Adoption Opinion"). The Court will not repeat those descriptions, except for those portions that are necessary for this review.

On May 23, 2005, plaintiffs Donald Vaughn, Malcolm Schinstine, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("the Union") (collectively "Plaintiffs") filed the Complaint in this action. Plaintiffs asserted several claims against Defendants, including: (1) violation of a labor agreement pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29

1

U.S.C. § 185; (2) violation of a retirement plan pursuant to Section 502 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a); and (3) breach of fiduciary duty seemingly also under also under Section 502 of ERISA, 29 U.S.C. § 1132(a).  (Compl. ¶¶ 55-66).

On February 10, 2006, Plaintiffs filed a motion to remit this case to arbitration and stay further discovery (the "Arbitration Motion").  After the parties fully briefed the matter, on May 4, 2006, Judge Bongiovanni issued the Report and Recommendation addressing Plaintiffs' motion, recommending that Plaintiffs' motion be granted, and that the matter be remitted to arbitration. (Report and Recommendation at 12.)

On May 19, 2006, Defendants filed an objection to the Report and Recommendation. After briefing of the matter, on July 31, 2006 the Court issued the Adoption Opinion and an accompanying order: (1) overruling Defendants' objection to the Report and Recommendation; (2) adopting the Report and Recommendation; and (3) granting Plaintiffs' motion to remit this case to arbitration and stay further discovery.  On August 15, 2006, Plaintiffs filed a motion seeking an amendment of that order to reflect finality or, alternatively, certification of that order for interlocutory appeal.  After the matter was fully briefed, on November 8, 2006 this Court entered a memorandum opinion and order denying Plaintiffs' motion in its entirety.

According to several letter orders, it appears that a full-day mediation took place between the parties on August 7, 2007 and that, after various scheduling conflicts, another mediation was scheduled to occur on March 12, 2008, although it is unclear from the record whether this second mediation took place. See Letter Orders dated November 28, 2007, January 25, 2008, and March 5, 2008 (Docket Nos. 40-42).  According to Plaintiffs, arbitration is now scheduled to take place on November 6, 2008 with an additional date set for January 20, 2009.  (Pls.' Opp. at 2 (citing Certification of David Tykulsker, Esq.  ¶¶ 3-4, Ex. A, filed therewith)).

On July 21, 2008, Judge Bongiovanni entered another letter order, permitting dispositive motions to be filed no later than August 22, 2008.  On that date, Defendants filed their motion

2

for summary judgment (the "Motion").[1] The parties having completed briefing concerning Defendants' Motion, the Court will now conduct its review.

## II. DISCUSSION

### A. Standard of Review

Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Issues of material fact are genuine only if the evidence presented could allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the nonmoving party. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). However, the nonmoving party "cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact" sufficient to defeat summary judgment. *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 511 (3d Cir. 1994); *see also* Fed. R. Civ. P. 56(e) (nonmoving party's response must contain specific facts showing that there is a genuine issue for trial.)

### B. The Relevant Factual Background

At all relevant times, the Union represented production and maintenance employees at a certain facility located in Phillipsburg, New Jersey. (Report and Recommendation at 2). Beginning in 1980, the Union entered into a number of collective bargaining agreements ("CBA"s) with Flowserve's predecessor-in-interest, Flowserve, and Flowserve's successor-in-interest. *Id*. Two CBAs– one entered into in 1997 ("1997 CBA"), and another entered into in 2004 ("2004 CBA"), are relevant to the instant Motion.

---

[1] Defendants also filed a motion for leave to file counterclaims on June 20, 2008. By an order dated September 4, 2008, Judge Bongiovanni granted Defendants' motion and on September 8, 2008, Defendants filed their counterclaims. However, Defendants have not moved for summary judgment on their counterclaims. (Defs.' Br. at 1 n. 2).

The 1997 CBA includes two relevant sections. First, it contains what the parties refer to as "Letter M." (Pls.' Br. at 6). That section provides that:

> It is understood by the parties that any retired employee receiving benefits, or any person receiving surviving spouse benefits, as provided by the Agreement, shall not have such existing benefits terminated or reduced, regardless of the existence, or lack thereof, of the Labor Agreement, unless such reduction or termination is mutually agreed upon by the Company and the Union.

*Id.* Second, the 1997 CBA contains a provision that addresses the topic of arbitration. That section provides that:

> All differences, disputes, and grievances that may arise between the Union and the Company with regard to the interpretation or application of the provisions of this Agreement relating to rates of pay, wages, hours of employment, and other conditions that shall not have been satisfactorily settled after following the procedure set forth in Article 8 shall, at the request of either party, be promptly submitted to arbitration (by a Board of Arbitration at an informal hearing).

(Report and Recommendation at 3 (citing Pls.' Arb. Mot. at 2)).

The 2004 CBA also contains two relevant provisions. First, it provides that "[a]ll other letters or agreements not specifically referred to within this agreement become null and void with this agreement." (Pls.' Br. at 9). Second, it contains the same arbitration provision as the 1997 CBA. (Report and Recommendation at 9). The 2004 CBA does not contain a Letter M section. *Id.* at 9-10.

In November 2004, Flowserve sold the Phillipsburg facility, and in February 2005, Flowserve announced to retirees that they would be reducing their medical benefits effective March 1, 2005. (Report and Recommendation at 5).

### C.    The Report and Recommendation

In the Arbitration Motion, Plaintiffs argued that "the language of Letter M, as expressed in the 1997 CBA, stating that retired employees receiving benefits 'shall not have such existing benefits terminated or reduced, regardless of the existence, or lack thereof, of the Labor Agreement . . .,' vested the [medical benefits of the] putative employees, thereby insulating them from the elimination of Letter M in the 2004 CBA and its attendant provision that '[a]ll other letters or agreements not specifically referred to within this agreement become null and void with

4

this agreement." (Report and Recommendation at 6; *see also* Pls.' Arb. Mot. at 3-4).

Defendants countered "that the putative employees are not vested under the 1997 CBA, but rather, are subject to the 2004 CBA and its terms as evidenced by expiration dates which are provided for in all CBAs the parties previously entered, as well as by the underlying medical plans which do not contain arbitration clauses, and the language in the 2004 CBA which nullifies all previous agreements." (Report and Recommendation at 6; *see also* Defs.' Opp. to Arb. Mot. at 5-7).

In light of the foregoing arguments, Judge Bongiovanni framed the issue before her as follows:

> The issue is whether the retirees in question are vested under the 1997 CBA or whether the 2004 CBA, with its nullification language regarding prior agreements, is applicable. If the 2004 CBA is binding upon the retirees, then the issue is decided as the retirees would not have contractual protection regarding their medical benefits. If the 1997 CBA vested the retirees, then the issue is decided as the retirees would remain protected under the Letter M provision of the 1997 CBA.

(Report and Recommendation at 8). Put another way, Judge Bongiovanni reasoned that "the question becomes whether the determination of 'which CBA controls' falls within the scope of the arbitration clauses of either the 1997 or 2004 CBAs." *Id.*

Judge Bongiovanni correctly observed that "[i]n determining whether a dispute is subject to arbitration, pursuant to the arbitration clause of a collective bargaining agreement, a court is to consider (1) whether the present dispute comes within the scope of the arbitration clause, (2) whether any other provision of the agreement expressly excludes from arbitration the kind of dispute involved in the present case and (3) whether there is any other 'forceful evidence indicating that the parties intended such an exclusion.'" (Report and Recommendation at 7 (citing *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters*, 812 F.2d 91, 95 (3d Cir. 1987)).) Applying these factors, Judge Bongiovanni found that Plaintiffs successfully satisfied each of these elements and recommended that this case be remitted to arbitration. (Report and Recommendation at 9-11).

5

      **D.**      **This Court's Adoption of the Report and Recommendation**

In the Adoption Opinion, this Court reiterated that the dispute between the parties focused on "whether Defendants remain bound by the terms set forth in the 1997 CBA." (Adoption Opinion at 3). The Court noted that "Plaintiffs argue that . . . [the] terms [of the 1997 CBA] are still binding," while "Defendants argue that the 2004 CBA, and not the 1997 CBA, controls their obligations to their retired employees." *Id.* (citing Defs.' Opp. to Arb. Mot. at 3). The Court then held that Judge Bongiovanni correctly applied the relevant standards for determining whether a dispute is arbitrable pursuant to an arbitration clause of a collective bargaining agreement and: (1) overruled Defendants' objection to the Report and Recommendation; (2) adopted the Report and Recommendation; and (3) granted Plaintiffs' motion to remit this case to arbitration and stay further discovery. (Adoption Opinion at 8).

      **E.**      **Defendants' Motion for Summary Judgment**

           **1.**      **Defendants' Arguments**

In their instant motion, Defendants argue that the remaining counts in Plaintiffs' Complaint, specifically Counts I, III and IV, should be dismissed as a matter of law. They argue that the "sole issue in this litigation is whether the [2004 CBA] . . . rendered Letter M null and void, thereby removing the only restriction on Flowserve's unilateral right to modify retiree medical benefits." Defs. Br. at 2. They further assert that "[t]he answer is easy – there is clear and unambiguous language in the 2004 CBA which states: 'All other letters or agreements not specifically referred to within this agreement become null and void with this agreement.' *Id.* Defendants argue that because the nullification of Letter M provided Defendants with the unilateral right to modify retiree medical benefits, Plaintiffs claims under the LMRA and ERISA must fail as a matter of law. *Id.* at 3.

Defendants further argue that "[b]ecause Plaintiffs' Complaint can and should be dismissed as a matter of fact and law, Defendants believe arbitration is unnecessary." *Id.* at 1 n. 1. With respect to Count I, which asserts violations of Section 301 of the LMRA, Defendants

state that, in the Adoption Opinion, "the Court concluded that there was a question for an arbitrator to determine- namely, whether the parties' 1997 collective bargaining agreement ("CBA") or their 2004 CBA controlled the question at hand." *Id.* at 4 (citing Adoption Opinion at 5). Defendants argue that "[d]iscovery, however, has proven that interpretive question to be non-existent- a theoretical construct not supported by the factual record" and so arbitration is not necessary to determine this issue. *Id.* at 4-5. With respect to Counts III and IV of Plaintiffs' Complaint, which allege violations of Sections 502(a)(1)(B) and (a)(3) of ERISA, Defendants note that the Court "did not previously compel Counts III and IV to arbitration as these were brought solely under ERISA and solely by the individual Plaintiffs, Messrs. Vaughn and Schinstine." *Id.* at 16 n. 9. They assert that these ERISA claims are "non-arbitrable" and therefore "even if the Court were to require Defendants to arbitrate the Union's frivolous claim in Count I, there is no reason for the Court to allow Counts III and IV, which are equally baseless, to linger any longer." *Id.* at 1 n. 1, 16 n. 9.

### 2. Plaintiffs' Arguments

In response, Plaintiffs assert that they do not "disagree that the 2004 CBA rendered Letter M null and void. However, that is hardly the central question in this litigation- rather, the key issue is whether, by so agreeing, the Union thereby agreed that the Company could unilaterally modify the medical benefits of the Current Retirees." (Pls.' Opp. at 1).[2] Plaintiffs then reiterate the argument made in the Arbitration Motion, namely that the plain language of Letter M clearly "vests the retirees' medical benefits as of their retirement and initial receipt of the benefits." (*Id.* at 6).

Plaintiffs also note that in the Adoption Opinion, "this Court directed that the interplay

---

[2] On September 26, 2008, Plaintiffs filed their original opposition to Defendants' Motion. On September 29, 2008 Plaintiffs filed a motion seeking permission to file a revised and amended opposition, which the Court granted by an order dated October 1, 2008. As such, all references to Plaintiffs' opposition to Defendants' Motion refer to Plaintiffs' amended opposition, which was filed as an attachment to Plaintiffs' motion seeking permission to file an amended opposition.

between the 1997 CBA and the 2004 CBA as both bear on the issue of the medical benefits of the Current Retirees was to be determined by an arbitrator." *Id.* at 2. Plaintiffs argue that Defendants impermissibly attempt "to evade the requirement that they arbitrate" by arguing that discovery has been completed. *Id.* at 3. They argue that such an assertion regarding discovery is legally insufficient to allow the Court to circumvent the arbitration process and adjudicate the matter. *Id.* (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960)); *AT&T Technologies, Inc. v. Commc'n Workers*, 475 U.S. 643, 649-650 (1986) As such, Plaintiffs argue that this issue must be decided by arbitration. *Id.* at 4-5.

Further, Plaintiffs assert that the ERISA claims cannot be decided until the arbitration of the LMRA claim is complete, stating that "[t]he Third Circuit has taught that, in ERISA cases where the ERISA rights are derived from provisions of a collective bargaining agreement, resolution of any ERISA claims must await arbitral determination." *Id.* at 5 (citing *Viggiano v. Shenango China Div. Of Anchor Hocking Corp.*, 750 F.2d 276, 281 (3rd Cir. 1985) ("[A]ny program to which . . . employees are entitled springs initially from the collective bargaining agreement. Consequently, unless the arbitration results favorably to the plaintiffs, no procedural rights created by Congress will come into being." (internal citation omitted)).

### 3. As Previously Ordered by this Court, Plaintiffs' LMRA Claim Must Be Submitted to Arbitration

"It has long been an established precept of federal labor law that the method of dispute resolution agreed to by the parties in their labor agreement takes primacy over civil actions for breach of contract." *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 167 (3rd Cir. 1999) (citing *Vaca v. Sipes*, 386 U.S. 171, 184 (1967); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960); *American Mfg. Co.*, 363 U.S. at 567-568. Further, "Section 301 of the LMRA . . . mandates resort in the first instance to the CBA's contractual grievance and arbitration procedures." *Palumbo v. United Parcel Serv. of Am.., Inc.*, No. 06-5331, 2007 U.S. Dist. LEXIS 73510 at *10 (D.N.J. Oct. 2, 2007).

Without citation, Defendants argue that arbitration is no longer required with respect to

Count I of Plaintiffs' Complaint because discovery has proven that the only question the Court had previously remitted to arbitration, namely whether the 1997 CBA or 2004 CBA was controlling over the dispute at hand "to be non-existent- a theoretical construct not supported by the factual record." (Defs.' Br. at 4-5). However, whether discovery has yielded facts that resolve a particular issue is not a factor for determining whether such an issue should be remitted to arbitration. As Judge Bongiovanni correctly noted in her Report and Recommendation, the appropriate inquiry in determining whether an issue is subject to arbitration pursuant to the arbitration clause of a collective bargaining agreement is: (1) whether the dispute comes within the scope of the arbitration clause, (2) whether any other provision of the agreement expressly excludes from arbitration the kind of dispute involved in the present case and (3) whether there is any other 'forceful evidence indicating that the parties intended such an exclusion.'" (Report and Recommendation at 7 (citing *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters*, 812 F.2d 91, 95 (3d Cir. 1987))). Applying this standard, Judge Bongiovanni recommended that the parties' dispute regarding the retirees' medical benefits should be remitted to arbitration, a finding that this Court affirmed. *Id.* at 9-11; Adoption Opinion at 8. Defendants' assertions regarding evidence uncovered through discovery with respect to the dispute does not change the arbitrability of this issue and does not permit the circumvention of the method of dispute resolution agreed upon by the parties. Thus, the question of whether the retirees' medical benefits vest under Letter M of the 1997 CBA or if Letter M's exclusion from the 2004 CBA grants Flowserve the right to unilaterally modify the Current Retirees' medical benefits must be addressed by an arbitrator.

    **4.**     **Plaintiffs' ERISA Claims Must Be Stayed Pending the Arbitration**

Defendants further argue that, in the event the Court requires arbitration of Plaintiffs' LMRA claim in Count I, it should nevertheless decide Plaintiffs' ERISA claims in Counts III and IV because they are "non-arbitrable" and were brought "solely under ERISA and solely by the individual Plaintiffs, Messrs. Vaughn and Schinstine." Defs. Br. at 1 n. 1, 16 n. 9. It is not clear

9

from the Complaint that these claims are brought "solely by the individual Plaintiffs;" however, even if they were, Defendants' argument that the Court should decide these claims before arbitration is complete is unavailing.

In Counts III and IV of the Complaint, Plaintiffs allege that Defendants' failure to provide retirees with medical benefits constituted (1) a violation of the retirement medical plan that is actionable under Section 502 of ERISA, 29 U.S.C. § 1132(a), as well as (2) a breach of fiduciary duty seemingly also pursuant to Section 502 of ERISA, 29 U.S.C. § 1132(a).  (Compl. ¶¶ 61-66).

Courts in this circuit have recognized that "[t]here is often tension between the 'judicial remedies provided by ERISA and the arbitration favored by general principles of labor law." *Kilkenny v. Guy C. Long, Inc.*, 288 F.3d 116, 121 (3d Cir. 2002) (citing *Viggiano*, 750 F.2d at 279).  The Third Circuit explored this tension in *Viggiano*, noting that:

> ERISA provides for immediate access to the federal courts without resort to the labor arbitration forum in proper circumstances. *See Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984). But that result does not automatically follow in each instance where there is a controversy over some phase of employee welfare benefit plan as defined by ERISA. Resort to arbitration may still be appropriate where the parties contest the meaning of a term in a collective bargaining agreement.

*Viggiano*, 750 F.2d at 279.  Further, "arbitration should go forward before resolution of the plaintiff's claims under ERISA for breach of fiduciary duty where the employer's duty to make contributions under the plan was dependent on the interpretation of a collective bargaining agreement." *Seborowski*, 188 F.3d at 167 (citation omitted).

Here, it is evident that the issue on which Plaintiffs' ERISA claims hinge is contractual in nature.  As both parties note, the outcome will depend upon the arbitrator's determination of what obligation Flowserve had to provide medical benefits to retirees in light of Letter M as expressed in the 1997 CBA and the 2004 CBA.  (*See* Defs. Br. at 16, arguing Plaintiffs' ERISA claims "must fail because the parties rendered Letter M null and void in the 2004 CBA, thereby providing Flowserve the unilateral right to amend the current retirees' medical benefits.") (Pls.' Opp. at 6 (conceding that an "adverse ruling from the arbitrator" regarding the interpretation of

10

Flowserve's obligations under Letter M and the 2004 CBA would "doom their case.") Since this issue must be resolved by an arbitrator's interpretation of the language in Letter M and the 2004 CBA and not through the interpretation of any ERISA provisions, Plaintiffs' ERISA claims should be stayed pending the completion of arbitration.[3]  *See Viggiano*, 750 F.2d at 281 (ordering the district court to stay plaintiffs' ERISA claims pending the outcome of arbitration) (citations omitted).

### III. CONCLUSION

For these reasons, Defendants' motion for summary judgment is denied. An appropriate form of order is filed herewith.

Dated: October 30, 2008

                                                      s/ Garrett E. Brown, Jr.
                                              GARRETT E. BROWN, JR., U.S.D.J.

---

[3]Defendants urge that Plaintiffs' reliance on *Viggiano* is misplaced and that the Court should instead follow *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 141-45 (3d Cir. 1999), where the Third Circuit affirmed a district court's grant of summary judgment in favor of the employer, finding that the collective bargaining agreements at issue clearly and unambiguously did not provide retirees with lifetime guaranteed medical benefits. Defs. Rep. at 4-7. However, *Skinner* is distinguishable from the instant case because it does not address whether such an issue should be subject to arbitration.  Indeed, there is no discussion of whether the collective bargaining agreement at issue included any arbitration clause at all.